**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 15 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE NORTHWEST, INC. and AMERICAN MEDICAL RESPONSE, INC., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> ACE AMERICAN INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, <br><br> Defendants - Appellees. | No. 11-35956 <br><br> D.C. No. 3:09-cv-01196-JO <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, Senior District Judge, Presiding

Argued and Submitted March 5, 2013
Portland, Oregon

Before: TASHIMA, CLIFTON and BEA, Circuit Judges.

American Medical Response, Inc. and American Medical Response

Northwest, Inc. (collectively "AMR"), an ambulance service provider, appeal the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

district court's summary judgment in favor of ACE Ins. Co. and National Union Fire Ins. Co. in AMR's diversity insurance coverage action. We review *de novo* a district court's grant of summary judgment, choice of law determinations, and underlying legal questions. *Narayan v. EGL*, Inc., 616 F.3d 895, 898–99 (9th Cir. 2010). We view the evidence "in the light most favorable to the nonmoving party." *Id.* We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

This action arises out of the insurance companies' denial of coverage to AMR in connection with fourteen underlying state court actions filed by third-party plaintiffs against AMR and its employee Lannie Haszard. Thus far, one case went to trial with a jury verdict in favor of the plaintiff; AMR has settled six of the suits; and the Oregon state court granted summary judgment to AMR in another seven cases, but they are each on appeal.

These third-party plaintiffs alleged Haszard improperly touched or sexually abused female ambulance passengers while they were being transported in one of AMR's ambulances. The parties and the district court are familiar with the facts of the case so we recite them only as necessary to our disposition.

AMR's insurance policies issued by ACE and National Union during the relevant time period cover "bodily injury . . . caused by an occurrence." The

Policies each define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Each of the Policies contains a "separation of insureds" provision requiring that the Policies be applied separately to each insured as if each insured were the only insured under the Policies.

The Policies contain an exclusion for "intentional acts." Thus, we must determine whether that insured's potential basis of liability falls within the intentional acts exclusion. The intentional acts exclusion can be applied to a particular insured—here, AMR—only if that insured intended to cause injury to the plaintiff when performing the acts for which it is being sued—here, the hiring, retaining, training and supervising of Haszard.

In short, (1) who is seeking coverage and (2) for what actions or omissions do they seek coverage? Here, the answer is (1) AMR seeks coverage for (2) claims that it negligently hired, trained, retained and supervised Haszard. AMR does not seek coverage for any vicarious liability for Haszard's intentional acts.

As to the choice of law issue, we need not decide whether the district court should have applied Oregon or Colorado law because both states recognize that an insured's negligent conduct is covered as an "occurrence."

Neither ACE nor National Union disputes that AMR is covered for negligent acts and omissions under Oregon law, even where the insured's employee's actions that caused the plaintiff's injuries were intentional.  *See N. Clackamas Sch. Dist. v. Or. Sch. Bds. Ass'n Prop. & Cas. Trust*, 991 P.2d 1089, 1091-92 (Or. Ct. App. 1999).

AMR is also covered for negligent acts under Colorado law.  Under Colorado law, liability policies extend coverage to "occurrences" and other events defined as "accidents," unless the insured subjectively intended the harm that occurred.  "'Ordinary negligence does not constitute an intention to cause damage; neither does a calculated risk amount to an expectation of damage.  To deny coverage, then, the fact finder must find that the insured intended to cause damage.'"  *Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1193 (10th Cir. 2000) (construing Colorado law in an intentional discharge of pollutants case) (quoting *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989)).  The Colorado Supreme Court explicitly adopted the Second Circuit's reasoning in *City of Johnstown* in *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1088 (Colo. 1991).

The district court here, and both ACE and National Union, rely exclusively on *Mountain States Casualty Co. v. Hauser*, 221 P.3d 56 (Colo. Ct. App. 2009), to

4

urge there was no coverage. *Hauser*, however, is distinguishable because in *Hauser* the employer insureds seeking coverage were found by a jury to be liable for the employee's actions under theories of respondeat superior and vicarious liability based on the insured's own willful, wanton and reckless conduct. The jury awarded damages against the insured because the owners of the business "knew full well what was potentially going to happen with [the supervisor] and the female employees and did not care." 221 P.3d at 58.

Thus, the insured was guilty of intentional conduct, not negligence. As in the case before us, the Mountain States' policy had an exclusion for intentional conduct. Therefore, the trial court granted summary judgment to the insurance company, and the court of appeals affirmed.

Two facts make *Hauser* a very different case from the one here. First, in *Hauser* the insureds were the father and uncle of the abusing manager. They had knowledge of his proclivities given that he had sexually abused other female employees before Hauser. Yet, despite this knowledge, they chose to keep him in a management position, with power over Hauser. The *Hauser* court specifically did <u>not</u> decide the issue put here by AMR: "whether an injury resulting from the foreseeable harm in a <u>negligent</u> hiring or supervision case could ever be found to be 'unexpected' under an insurance policy provision in different circumstances."

5

221 P.3d at 61 (emphasis added). Here, the parties have not pointed to any allegations in the underlying complaints, nor findings by the 1998 jury, that AMR's acts or omissions were more culpable than negligence.

Second, the insureds were sued under a vicarious liability theory. That wrinkle is not present in this case. The parties have not pointed to any allegations that AMR is liable under a vicarious liability theory. Here, the claims are under a direct liability theory.

On remand, the district court will need to look at the allegations in each of the fourteen underlying third-party complaints, and at the 1998 jury verdict, to determine whether coverage applies under our analysis.

**REVERSED AND REMANDED.**